■ CLAES LINDGREN, Respondent, v NEW YORK CITY HOUSING AUTHORITY et al., Appellants, et al., Defendants. JUAN VILLOCH, Plaintiff, v SHAHZAD S. MIRZA et al., Defendants. (And a Third-Party Action.) CLAES LINDGREN, Fourth-Party Plaintiff-Respondent, v NEW YORK CITY HOUSING AUTHORITY et al., Fourth-Party Defendants-Appellants. [704 NYS2d 30] —Order, Supreme Court, New York County (Elliott Wilk, J.), entered on or about May 12, 1999, which denied the motion by defendants New York City Housing Authority (NYCHA) and Officer Edwin Maher to dismiss plaintiff Lindgren's complaint against them or alternatively for summary judgment dismissing the complaint; and order, same court, Bronx County (Howard Silver, J.), entered on or about October 8, 1998, which granted defendant/third-party defendant and fourth-party plaintiff Lindgren's motion to renew or reargue a prior order of the same court and Justice, entered June 17, 1998, which had granted summary judgment dismissing Lindgren's claim for contribution against fourth-party defendants NYCHA and Maher, and upon renewal, limited its applicability to the Villoch action, affirmed, without costs.

These personal injury actions, which had been litigated in different counties but consolidated for purposes of this appeal, arose out of an automobile accident that took place on the

Bruckner Expressway, around 3:30 A.M. on June 6, 1992. Claes Lindgren lost control of his vehicle, which became disabled in the left lane of traffic. A passing motorist, Juan Villoch, stopped to help. Lindgren, Villoch and his brother caught the attention of a NYCHA police car in the right lane, driven by Maher, who was accompanied by another police officer in the passenger seat.

The three men wound up in the middle lane of the highway to speak with Maher, but within moments were hit by another car that had been traveling in the middle lane. This car, driven by Shahzad S. Mirza and owned by Gobino Wadhwani,* also hit the police car. Lindgren and Villoch were hospitalized for their injuries.

Lindgren commenced an action in Bronx Supreme Court against NYCHA, Maher, Mirza and Wadhwani, seeking damages for his personal injuries (the Lindgren action). Villoch commenced a separate action in Bronx Supreme Court against Mirza, Madhwani and Lindgren, seeking damages for Villoch's injuries (the Villoch action). Mirza and Madhwani named Lindgren as a third-party defendant in the Villoch action. Lindgren, in turn, asserted a fourth-party claim against NYCHA and Maher, seeking contribution from them should he be found liable for Villoch's injuries.

NYCHA successfully moved to change the venue of the Lindgren action to New York County, and Lindgren's motion to consolidate the Lindgren and Villoch actions was denied. Therefore, Lindgren retained the law firm of Fitzgerald & Fitzgerald (F&F) to litigate his damages claims in the Lindgren action, while his insurance company designated Beesecker & Koors (now known as the firm of L.A. Beesecker, Esq.) to defend Lindgren in the Villoch action.

By order dated June 11, 1998, Bronx Supreme Court granted the motion of defendants NYCHA and Maher to dismiss Lindgren's fourth-party complaint against them in the Villoch action. The Beesecker firm did not oppose this motion. NYCHA and Maher then moved to dismiss Lindgren's complaint in the Lindgren action on res judicata/collateral estoppel grounds, asserting that Bronx Supreme Court's dismissal of the fourth-party complaint precluded Lindgren from relitigating the issue of NYCHA's liability for his injuries. The NYCHA defendants also asserted their entitlement to summary judgment on the

---

* This party's name is variously spelled "Gobino Wadhwani," "Gobind Wadhwani," "Gobina Wadhwani" and "Gobind Madhwani" throughout the parties' submissions. The first spelling appears to be the correct one, as it is the one used in the body of Wadhwani's own verified answer.

merits. In the first of the orders on appeal, the Supreme Court, New York County, denied the defendants' motion.

F&F then made a cross-motion before Bronx Supreme Court to be substituted as counsel in the Villoch action, and for renewal, reargument and modification of the order dismissing the fourth-party complaint. In the second of the orders on appeal, the Judge presiding over the Villoch action granted this cross-motion "only to the extent of limiting [the prior order's] applicability to this action, before this Court." In other words, Bronx Supreme Court endeavored to clarify that it had not meant for the dismissal of the fourth-party contribution claim to preclude litigation of Lindgren's own personal injury claims in another forum, particularly since Bronx Supreme Court had previously refused to consolidate the actions.

We reject the NYCHA defendants' argument that Lindgren is collaterally estopped from litigating the issue of defendants' negligence in the New York County action. For collateral estoppel (also known as "issue preclusion") to apply, there must be an identical issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling (*Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65, 71). Neither of those requirements is met here.

The issue to be decided in the Lindgren action is whether the NYCHA defendants caused Lindgren's injuries by breaching a duty of care owed to him. By contrast, the issue decided in the Villoch action was whether the NYCHA defendants would be partly liable for contribution if Lindgren were found liable for Villoch's injuries. Although some of the same facts underlie both questions, the two cases involve different elements of proof and different evidence, such that there is no identity of issues. An award of damages to Lindgren for his own injuries would not be inconsistent with the decision in the Villoch action that NYCHA is not liable to him for his responsibility, if any, for Villoch's injuries. Having successfully compelled Lindgren to litigate the facts of the accident in two different venues, the NYCHA defendants cannot successfully argue that Lindgren had a fair opportunity—or indeed any opportunity—to address the issue of NYCHA's liability for his own injuries in Bronx Supreme Court.

Defendants attempt to confuse the issue by claiming that F&F had no standing to bring the motion for renewal/reargument. The NYCHA defendants invoke the principle that a party may have only one counsel of record in a given action,

but they ignore the fact that Lindgren (not by choice) was a party to two separate actions and therefore had two sets of attorneys to represent his diverse interests (*compare, Kallivokas v Athanasatos,* 151 AD2d 396). NYCHA can hardly fault F&F for attempting to intervene in the Villoch action, when it was NYCHA who first tried to use the Villoch order to preclude F&F's claims in the Lindgren action.

Bronx Supreme Court did not improperly exercise its discretion in granting F&F's motion, which could be considered a motion for renewal based on the new fact that NYCHA was urging an allegedly overbroad reading of the Villoch court's order so as to preclude the Lindgren action (*see, Horizons Hotels Corp. v New York Patroons,* 193 AD2d 911, 913-914 [renewal based on new facts that came to light in subsequent litigation]). Ideally, it might have been better to denominate it a motion to resettle the order, which is the appropriate vehicle to clarify a prior decision (*Foley v Roche,* 68 AD2d 558, 566). Nonetheless, pursuant to CPLR 2001, the exact label for this motion is less important than the fact that it was necessary to correct a procedural irregularity in a just fashion (*Eugene Di Lorenzo, Inc. v Dutton Lbr. Co.,* 67 NY2d 138, 143). In light of the absence of argument concerning NYCHA's unopposed motion in the Villoch action, renewal/reargument was an appropriate way to dispel any confusion as to which issues had implicitly been resolved by dismissal of the fourth-party complaint, and which issues had been left for trial in New York County. In any event, even if Bronx Supreme Court's grant of renewal were improper, the original order dismissing Lindgren's fourth-party complaint still would not have precluded his negligence claims on his own behalf, for the reasons previously stated.

Summary judgment on the merits was properly denied in the Lindgren action, as numerous issues of fact exist. For example, the parties dispute whether the emergency lights of Maher's car were turned on; how much time elapsed between the first and second accidents; whether Lindgren, Villoch and his brother crossed the center lane on their own initiative or at the officer's direction; and whether it was possible for Maher to park the police car in a different location. Villoch, for instance, testified that although the police car was stopped for several minutes before the collision with Mirza's vehicle, Maher neither turned on the emergency lights nor left the police car to assist Lindgren and Villoch. In general, questions of negligence regarding a road accident are best resolved at a jury trial, rather than on a motion for summary judgment (*Jones v Egan,*

252 AD2d 909, 911; *Gross v New York City Tr. Auth.*, 256 AD2d 128).

We decline to consider defendants' argument that under Vehicle and Traffic Law § 1104 (emergency vehicles), Lindgren must show not merely ordinary negligence by Maher, but reckless disregard for the safety of others. Defendants concede that they never raised this defense on the action, instead seeking summary judgment based on an absence of ordinary negligence. The issue is therefore not preserved as a basis for this Court to grant summary judgment. This is not a case where the facts are undisputed and only a purely legal point is being raised for the first time on appeal (*compare*, *Chateau D'If Corp. v City of New York*, 219 AD2d 205, 209, *lv denied* 88 NY2d 811). Here, by contrast, application of Vehicle and Traffic Law § 1104 to grant defendants' summary judgment motion would require this Court to decide disputed factual issues concerning the circumstances of the accident (*Foster v New York City Hous. Auth.*, 251 AD2d 42, 43).

Even if we chose to apply the "reckless disregard" standard, it is for the trier of fact to decide whether Maher complied with that standard, given that so many key details of the accident are the subject of contradictory allegations (*compare*, *Saarinen v Kerr*, 84 NY2d 494 [facts of accident undisputed]). Neither is it clear as a matter of law that Maher's actions amounted to no more than a momentary judgment lapse for which no liability attaches in an emergency situation (*Szczerbiak v Pilat*, 90 NY2d 553, 556). Under the time frame described by Villoch, Maher could have had enough time to consider and carry out the safer course of action suggested by plaintiff's expert. The dissent seemingly discounts this evidence in the record by stating that the "only credible evidence" shows that Lindgren and Villoch were hit "within seconds" after Maher pulled over. On a motion for summary judgment, this Court's role is limited to finding triable issues, not deciding factual questions that depend on the memory and credibility of witnesses (*Rose v Da Ecib USA*, 259 AD2d 258, 259). Concur—Rosenberger, J. P., Nardelli, Mazzarelli and Ellerin, JJ.

Andrias, J., dissents in part in a memorandum as follows: I would reverse Justice Wilk's order in the Lindgren action and grant the motion by the Housing Authority and Officer Maher for summary judgment dismissing the complaint against them.

Clearly, the actions of Officer Maher, the driver of an authorized emergency vehicle assisting at the scene of an accident, are entitled to be judged in light of the qualified privilege afforded him under Vehicle and Traffic Law § 1104 (e). Every po-

lice vehicle is an authorized emergency vehicle (Vehicle and Traffic Law § 101) and emergency operation is defined as the operation of an authorized emergency vehicle when such vehicle is responding to, or working or assisting at the scene of, an accident (Vehicle and Traffic Law § 114-b).

Article 23 of the Vehicle and Traffic Law, specifically section 1104 (b) (1), excepts drivers of authorized emergency vehicles, when involved in an emergency operation, from the provisions of the Vehicle and Traffic Law requiring obedience to traffic laws on public highways, although such privilege is qualified in that they are not protected from the consequences of their reckless disregard for the safety of others (§ 1104 [e]). Under that section, Officer Maher may not be held liable for his operation of the vehicle under emergency circumstances unless he acted with "reckless disregard for the safety of others".

Reckless disregard is equated with the well-established tort concept of recklessness, which has been defined as "the conscious or intentional doing of an act of an unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow, and done with conscious indifference to the outcome" (*Szczerbiak v Pilat*, 90 NY2d 553, 557 [citation omitted]).

It is undisputed that, at about 3:30 A.M. on a rainy morning as he proceeded eastbound on the Bruckner Expressway near Castle Hill Avenue, plaintiff Claes Lindgren lost control of his car, hit the center divider, spun around and came to a stop facing north in the left lane of the three lane roadway. Plaintiff Villoch, a passing motorist, stopped to help Lindgren and Villoch, his brother (a passenger in his car) and Lindgren flagged down a passing Housing Authority police patrol car driven by Officer Maher. Officer Maher, who because of poor visibility had not seen Lindgren's vehicle until he reached it, stopped his car in the right hand lane because there were already two cars stopped on the right shoulder. The three men crossed the middle lane and were speaking to the officer and his partner when a car driven by Shahzad Mirza approached and struck Villoch and Lindgren.

In opposition to defendants-appellants' motion for summary judgment, Lindgren submitted an affidavit by a retired New York City police officer which faulted Officer Maher for failing to position his car behind the disabled Lindgren vehicle with his rack lights illuminated; for failing to immediately move and reposition his vehicle properly behind the disabled vehicle once he had stopped; for failing to immediately move and reposition his vehicle on the shoulder of the roadway, thus causing

a funnel effect essentially forcing any vehicle into the center lane where Lindgren and Villoch were standing; and, for motioning the pedestrians to come over to the driver's side of his car or for failing at least to tell them to stand on the passenger side of the police car.

However, the only credible evidence in the record shows that Lindgren and Villoch were struck by the Mirza vehicle within seconds after Officer Maher stopped his patrol car. Clearly, the officer did not have sufficient time to assess the situation and take the action suggested by plaintiff's expert before the accident occurred. At most, each purported violation of proper police procedure lacks a basis in the record or would, at most, amount, as a matter of law, to a " 'momentary judgment lapse' " underexigent circumstances, for which liability may not be imposed under Vehicle and Traffic Law § 1104 (*Szczerbiak v Pilat, supra*, at 557).

The majority recognizes our holding in *Chateau D'If Corp. v City of New York* (219 AD2d 205, 209, *lv denied* 88 NY2d 811) that the failure to raise the issue on the original summary judgment motion does not bar this Court's review where a party does not allege new facts, but rather raises a legal argument appearing on the face of the record which could not have been avoided if brought to the opposing party's attention at the proper juncture (*see also, Matter of Travelers Indem. Co. [Levy]*, 195 AD2d 35, 41). It, nevertheless, declines to consider defendants' Vehicle and Traffic Law § 1104 argument on the grounds that it is raised for the first time on appeal, that this is not a case where a purely legal point is being raised for the first time on appeal, and that to grant defendants summary judgment on the basis of Vehicle and Traffic Law § 1104 would require us to determine disputed factual issues concerning the circumstances of the accident.

However, plaintiff's own verified complaint alleges that Officer Maher was acting in his official capacity at all relevant times and "undertook to perform certain services as a police officer, particularly with respect to a disabled vehicle in the roadway". The complaint further alleged "carelessness, recklessness and negligence in failing to follow and adhere to police standards, rules and regulations relative to responding to a roadway emergency". Moreover, the parties having laid bare their proof on this motion for summary judgment, the only dispute remaining pertains to Officer Maher's alleged failure to adhere to the safety guidelines espoused by plaintiff's expert and the legal question of whether his conduct is protected from liability under Vehicle and Traffic Law § 1104.

While there might arguably be questions of fact as to whether Officer Maher was guilty of ordinary negligence, unlike *Foster v New York City Hous. Auth.* (251 AD2d 42, 43), relied upon by the majority, there is nothing in the record to raise a factual issue as to whether Officer Maher, in the rapidly developing emergency situation presented, had the opportunity to take the steps suggested by plaintiff's expert or, in failing to do so, acted with " 'reckless disregard for the safety of others' ", that is, with conscious disregard of a known or obvious risk so great as to make it highly probable that harm would follow with conscious indifference to the outcome (*Szczerbiak v Pilat, supra*, at 557). Faced with an automobile accident of unknown severity, which quite possibly could have involved serious personal injuries, the officer's first concern was to find out if medical or additional emergency assistance was required.

