Nicholson v Nicholson (2003 NY Slip Op 51713(U))

[*1]

Nicholson v Nicholson

2003 NY Slip Op 51713(U)

Decided on December 18, 2003

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 18, 2003

Supreme Court, Kings County
 Elizabeth Nicholson, Plaintiff,
against
FREDERICK NICHOLSON, Defendant.
INDEX NO: 44702/98

JEFFREY S. SUNSHINE, J.
Upon the foregoing papers, plaintiff moves for an order releasing to counsel all documents, records, testing materials, notes, graphs, and scores upon which the court appointed forensic psychologist in the underlying change of custody application, Katherine C. Smith, Ph.D., based her reports dated June 26, 2001 and March 26, 2002.

Facts and Procedural Background
The instant motion arises out of a previously litigated custody dispute; there is no custody action currently pending before this court. The parties were married in January 1997 and divorced by judgment dated January 6, 2000, which incorporated the stipulation of settlement placed on the record in open court on May 27, 1998 and the judgment of separation signed on August 31, 1998. At the time that the judgment was finalized, the parties had been involved in earlier litigation concerning custody, which they resolved through a stipulation placed on the record in open court. The stipulation and judgment of separation provided that the parties would share joint custody of their daughter, born on July 3, 1997, with her primary residence being with the mother.
As is relevant here, on January 25, 2001, the father filed an application requesting custodial time with the parties' daughter; the mother cross-moved for an order suspending the father's visitation with the child, appointing a new law guardian, and referring alleged evidence of the father's abuse of the child to the Administration of Children's Services (ACS). The father thereafter filed an application for sole custody of the child and requested that the mother have only supervised visitation. By order dated March 21, 2001, the court appointed Dr. Smith to interview the parties and the child and to prepare forensic evaluations. On June 26, 2001, Dr. Smith filed her report, in which she recommended that the father receive sole custody and that the mother have liberal visitation. In response to a report of suspected child abuse and maltreatment of the child filed by the mother with ACS, a hearing was held on August 15, 2001; thereafter, an order continuing joint custody, but providing that primary physical custody of the child would be with the father and the mother would have supervised visitation two to three times a week, was issued.
An eleven day trial took place between August 21, 2001 and November 26, 2001 before the Honorable Virginia Yancey during which numerous witnesses testified, including Dr. Smith, [*2]plaintiff, defendant, a case worker from ACS, a child protective specialist with ACS, plaintiff's former husband, and two certified social workers. According to Judge Yancey's extensive written decision, Dr. Smith testified with a reasonable degree of psychological certainty that the father should receive physical custody of the child and that the child should visit with the mother in the mother's home; her forensic reports were also introduced into evidence. The child's law guardian took the position that the father should receive sole custody. By decision dated January 8, 2002, the court awarded the father sole custody of the child, with the mother to have supervised visitation. Thereafter, by order dated December 2, 2002, an order setting the details of the custody and visitation arrangements was signed (the December 2002 order). As is relevant here, that order also provided that:

"ORDERED, that counsel has signed affidavits that indicate that the forensic reports are not to be distributed, copied or in any way disseminated. If it comes to the Court's attention that the affirmations and this Court's directive have in any way been disregarded, that person will be cited for contempt, and upon a finding of wilfulness, be incarcerated. Counsel shall not turn over forensic reports without notifying this Court that he/she has been replaced as attorney, and that the Court has advised counsel that it has received the new attorney's affirmation."
The present application was randomly reassigned to this Justice, after plaintiff hired new counsel and Judge Yancey recused herself (see Card v Siragusa, 214 AD2d 1022, motion to amend denied 1995 WL 581538 [where there is no allegation that recusal is statutorily required, the matter of recusal is addressed to the discretion and personal conscience of the Justice whose recusal is sought]; Corsini v Corsini, 199 AD2d 103 [absent a legal disqualification under Judiciary Law § 14, a trial judge is the sole arbiter of recusal and his or her discretionary decision is within the personal conscience of the court when the alleged appearance of impropriety arises from inappropriate awareness of nonjuridical data]).
It is also relevant to note that Dr. Smith died suddenly and unexpectedly during the pendency
of this motion. The Parties' Contentions
In support of the instant motion, plaintiff relies upon a memorandum from Dr. N. G. Berrill to her former attorney dated November 6, 2001, which states in relevant part that:

"the disparity that exists with respect to the [test findings of an MCMI-III test done in this office] raises obvious concerns about conclusions drawn by Dr. Smith in this matter as it pertains to Ms. Nicholson's diagnosis and perhaps more importantly, to issues that impact on her ability to properly/adequately parent the subject child."
Plaintiff thus concludes that Dr. Smith's interview notes, testing data, raw scores, answer sheets, scoring graphs, and interpretative reports for the MMPI-2 given to plaintiff "are required, as they [*3]were not introduced at the time of trial and may or may not effect a different result after a thorough review and evaluation by [a] competent psychological expert." Thus, the requested material is needed so that plaintiff can determine whether there is a basis for renewal and reargument. Although plaintiff requested that defendant's attorney and the law guardian release the records, they refused to comply with the request, apparently in recognition of the order sealing the record. At oral argument, plaintiff further asserted that the order sealing the records was not in compliance with the requirements of 22 NYCRR 216.1, which pertains to the sealing of court records.[FN1]

In opposition, defendant argues that plaintiff's request should be denied as untimely and lacking in merit. More specifically, defendant alleges that the custody determination plaintiff is attacking is the subject of a pending appeal. Accordingly, if plaintiff believes that the test results underlying Dr. Smith's findings should have been produced, that issue should have been raised during the trial and then raised on appeal; if the issue was not so raised and appealed, plaintiff should be deemed to have waived it. In the alternative, plaintiff's request for judicial relief is without merit, since there is no demand for relief pending before this court; even if there were, the court has held that pre-trial discovery of the material sought is not available inasmuch as the parties' attack of an expert's findings is limited to cross examination at trial. Moreover, plaintiff requested the release of the documents during the trial, which request was granted and the records were provided to Dr. Berrill. Nonetheless, Dr. Berrill did not testify, nor did plaintiff seek the release of the underlying test findings. Lastly, although plaintiff's appeal of the custody has been perfected, the issue of the propriety of sealing Dr. Smith's record was not addressed therein.[FN2]

[*4]Discussion
Plaintiff's request must be denied on numerous grounds. As a threshold issue, it must be recognized that a court has inherent control over its own records and may order that those records be sealed in any case where the circumstances require it (Rich-Haven Motor Sales v National Bank, 163 AD2d 288, 289, appeal denied 76 NY2d 709, citing Matter of Crain Communications v Hughes, 74 NY2d 626, 541). Consistently, the Freedom of Information Law (Public Officers Law § 84 et seq.) expressly excludes the judiciary from its definition of an agency subject to the disclosure rules (see Public Officers Law § 86[3], 87[2]; see also Matter of Pasik v State Bd., 102 AD2d 395, 399, appeal withdrawn 64 NY2d 886).
Further, the December 2002 order that sealed the records is law of the case. "The 'law of the case' doctrine is a rule of practice which provides that once an issue is judicially determined, either directly or by implication, it is not to be reconsidered by Judges or courts of co-ordinate jurisdiction in the course of the same litigation" (Holloway v Cha Cha Laundry, 97 AD2d 385, 386, citing Martin v City of Cohoes, 37 NY2d 162, 165; see also Fleitz v Fleitz, 223 AD2d 946, 949, lv denied 88 NY2d 802 [since plaintiff's argument that the income from defendant's disability policies was marital property was already rejected, reconsideration of that issue was barred by the doctrine of law of the case]; cf. Simpson v Bronx Cross County Med. Group, 288 AD2d 109 [the prior order of another justice, which held that issues of fact precluded determination as to whether the continuous treatment doctrine applied to make the action timely as against appellant, did not create law of the case precluding another justice from considering that question on the basis of additional evidence]). "The law of the case 'is a rule of practice, an articulation of sound policy, that, when an issue is once judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned'"(Thomas v Dietrick, 284 AD2d 325, 325, quoting Martin v City of Cohoes, 37 NY2d 162, 165). However, "the proscription against relitigation of an issue previously decided by a judge of coordinate jurisdiction presumes that the parties were afforded a full and fair opportunity to litigate the issue in the course of the earlier proceedings" (Gee Tai Chong Realty v GA Ins. Co., 283 AD2d 295, 296 [citations omitted]).
Herein, the December 2002 order specifically addressed the precise issues raised on this motion, i.e. whether the underlying test results should be sealed. The parties were given a full and fair opportunity to litigate the issue, including the issue of whether the order was issued in compliance with 22 NYCRR 216.1. Thus, the doctrine of law of the case mandates denial of this branch of the cross motion (see Thomas, 284 AD2d 325; accord Jamaica Pub. Serv. Co. v Compagnie Transcontinentale de Reassurance, 282 AD2d 227; Paris v Waterman Steamship, 281 AD2d 167, lv dismissed 96 NY2d 937).
Similarly, to the extent that plaintiff seeks to relitigate the issue of whether the raw data underlying Dr. Smith's opinion should have been introduced during the custody hearing, the claim is precluded by collateral estoppel (see Kaufman v Eli Lilly & Co., 65 NY2d 449 [the doctrine of collateral estoppel precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point; it is a doctrine intended to reduce litigation and conserve the resources of the court and litigants based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it]; Gilberg v Barbieri, 53 NY2d 285, 291 [the doctrine of [*5]collateral estoppel is based on the notion that it is not fair to permit a party to relitigate an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point]).

"The doctrine of collateral estoppel '"precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same" (Ryan v New York Tel. Co., 62 NY2d 494, 500; see also, Burgos v Hopkins, [14 F 3d 787, 792] ). The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action (Ryan v New York Tel. Co., supra, at 500-501'(Parker v Blauvelt Volunteer Fire Co., Inc., 93 NY2d 343, at 349)."
(Sam v Metro-North Commuter R. R., 287 AD2d 378, 379; accord Pinnacle Consultants v Leucadia Natl., 94 NY2d 426). For collateral estoppel to be applicable, the issue decided in the prior action must also be decisive of the second action (see Lindgren v New York City Hous. Auth., 269 AD2d 299).
It cannot be denied that plaintiff had a full and fair opportunity to present all evidence in her support at the custody determination, which included the opportunity to cross examine Dr. Smith. During such cross examination, plaintiff could have explored the issue of the raw data and test results underlying Dr. Smith's report and opinion. This fact is underscored by Dr. Berrill's memorandum, written during the trial, in which he indicates that the raw data may not have supported Dr. Smith's diagnosis and opinion. Having failed to avail herself of the opportunity to contest Dr. Smith's findings during the trial, plaintiff is collaterally estopped from seeking to challenge the report herein.
 In this regard, it is also noted that plaintiff's assertion that the records underlying Dr. Smith's findings are necessary to determine whether a motion to renew or reargue should be made is similarly unpersuasive. Pursuant to CPLR 2221 (d) (3), a motion for leave to reargue shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry (see generally Commissioners of State Ins. Fund v. Brooklyn Barber Beauty Equipment Co., 2002 WL 32098265). Inasmuch as plaintiff's appeal has been perfected and the parties are awaiting oral argument before the Appellate Division, and therefore this statutory time period has expired.
In the alternative, pursuant to CPLR 2221 (e) (2), a motion to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination." In this regard, it can not be argued that plaintiff's instant application is based upon new facts, since her argument is premised upon the memorandum from Dr. Berrill dated November 6, 2001; on that date, the trial was still pending. Moreover, plaintiff fails to offer any support for the conclusion that the release of the subject records would have changed the custody determination at issue herein. In the first instance, Dr. Smith's report and testimony were based upon her review of the history of the case, the findings of the others professionals involved, and interviews with the [*6]parties. Thus, her interpretation of plaintiff's psychological testing results is but a single factor relied upon in making her recommendation. More importantly, the court is not bound by the opinions offered by the expert, and is instead obligated to reach its own determination of what is in the best interests of the child, in view of the totality of the circumstance (see generally Eschbach v Eschbach, 56 NY2d 167; Zafran v Zafran, 306 AD2d 468; Rupp-Elmasri v Elmasri, 305 AD2d 393; see also Taylor v Lumba, 309 AD2d 941 [while the recommendations of court-appointed experts are entitled to some weight, the court is not bound by those recommendations]; Griffin v Scott, 303 AD2d 504 [family court was not required to follow the recommendations of the forensic examiner and the law guardian]; Berstell v Krasa-Berstell, 272 AD2d 566, lv denied 95 NY2d 770 [the court was not required to accept the recommendations of the court-appointed psychologist]; Edgerly v Moore, 232 AD2d 214 [while the views of independent experts are entitled to weight, they do not take precedence over the judgment of the trial judge]).
 Lastly, it must also be noted that the court does not have before it an application for any relief but for the release of the subject records. Plaintiff's instant motion is therefore analogous to a demand for disclosure to aid in bringing an action pursuant to CPRL 3102 ( c). A petition for pre-action discovery should only be granted when the petitioner demonstrates that he or she has a meritorious cause of action and that the information sought is material and necessary to the actionable wrong; it cannot be used to ascertain whether a cause of action exists (see Holzman v Manhattan & Bronx Surface Tr. Operating Auth., 271 AD2d 346; Edens v State, 259 AD2d 729; In re McDonell, 195 Misc 2d 277; cf. Wein & Makin v Watchman, 255 AD2d 244 [court properly exercised its discretion in directing preaction disclosure pursuant to CPLR 3102 ( c) inasmuch as petitioner established that it likely had causes of action against respondent]). Herein, plaintiff is only speculating the test results sought would impact upon the custody determination. In this regard, it must also be noted that if plaintiff were to commence another proceeding seeking to alter the custody arrangement, raw test data and/or a forensic evaluation conducted approximately three years ago would have little, if any, probative value.
In the alternative, even if plaintiff did have an application seeking a change of custody pending, discovery on the issues of fault and custody are limited (see e.g. Garvin v Garvin, 162 AD2d 497; Ochs v Ochs, 193 Misc 2d 502; MC v WW, NYLJ, 7/8/03, p 19, col 5). Rather, "the conclusions of the court-appointed neutral forensic psychologist, like those of any other expert witness, are subject to question, through the process of cross-examination and rebuttal" (Ochs, id. at 506, citing Murtari v Murtari, 249 AD2d 960). As noted above, plaintiff had a full opportunity at trial to cross examine Dr. Smith with regard to the raw data relied upon in reaching her determination. Now, however, it would not be possible for plaintiff to cross examine Dr. Smith, since she is now deceased.
From this it follows that plaintiff's proper remedy is to pursue her appeal of the custody determination and/or the December 2002 order sealing the court records. Indeed, plaintiff's appeal has been filed and the parties are waiting for oral argument to be scheduled.

Conclusion
Accordingly, for the above stated reasons, plaintiff's motion is denied in its entirety.
The foregoing constitutes the decision and order of the court.

E N T E R
 HON. JEFFREY S. SUNSHINE
 J. S. C.
Decision Date: December 18, 2003
Footnotes

Footnote 1: As is relevant here, 22 NYCRR 216.1 provides that:
"(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard.

"(b) For purposes of this rule, 'court records' shall include all documents and records of any nature filed with the clerk in connection with the action."

Footnote 2: The child's former law guardian also submitted an affirmation in opposition to plaintiff's motion. The court declines to consider that affirmation, however, since the law guardian was not reappointed to represent the child on this application.