*503 OPINION OF THE COURT
Robert A. Spolzino, J.
Is a litigant in a contested custody proceeding entitled to pretrial disclosure of the notes and raw testing data compiled by the court-appointed neutral forensic psychologist? For the reasons that follow, the court concludes that, in the absence of special circumstances not present here, the answer is no. The defendant’s request for an order directing such disclosure is, therefore, denied.
This is an action for divorce and ancillary relief in which the most significant issue is custody of the parties’ two children, Jonathan, age 12, and Julie, age 9. After the parties advised the court that they could not reach an agreement with respect to custody, the court appointed a law guardian to represent the children and a neutral forensic psychologist[1] to prepare an evaluation of the respective parental fitness of the parties. The psychologist interviewed and conducted psychological testing of the parties and the children and then rendered a report in which she recommended that custody be awarded to the plaintiff.
In a pretrial conference shortly after the report was released, the attorney for the defendant requested informally that he be provided with copies of the psychologist’s notes and the raw data resulting from the psychological testing she had conducted. His purpose was to submit the data for review by the defendant’s psychological expert in order to develop a basis for cross-examining the court-appointed psychologist and rebutting her recommendation. Without addressing the issue of entitlement to such disclosure, the court directed the defendant’s counsel to ask the law guardian to communicate this request to the court-appointed psychologist. When the psychologist objected, in a verbal communication to the court, the court advised counsel of her objections and directed them to submit their arguments as to whether disclosure of the notes and raw data should be compelled.
Before addressing the merits of this dispute, it is necessary to dispose of the defendant’s claim that the court-appointed *504 forensic psychologist has no standing to contest the disclosure of her raw data and notes. The right to seek a protective order from disclosure is not limited to parties (see, CPLR 3103); non-parties are regularly permitted to contest the discovery demands that are made upon them (see, e.g., Snow v Snow, 209 AD2d 399 [2d Dept 1994]). There is nothing in these authorities to indicate that the right to seek such relief is waived by accepting a court appointment. Indeed, the limited authority that there appears to be with respect to the somewhat unique role of the court-appointed expert supports the proposition that a court-appointed forensic psychologist does have the right to seek the intervention of the court, at least with respect to the enforcement of her entitlement to a fee (see, Matter of Rebecca B., 227 AD2d 315 [1st Dept 1996]; Sciacca v Sciacca, 173 Misc 2d 756 [Sup Ct, Suffolk County 1997]). The right of the court-appointed neutral expert to seek protection from disclosure of his or her notes and raw data should be no less. In any event, standing to raise objections to the requested disclosure here does not depend solely on the rights of the forensic psychologist, since the attorney for the plaintiff has also objected. There is no question that he has standing to do so.
Turning to the merits, it is beyond dispute that full disclosure of all relevant and material information has proven to be the surest method of sharpening the issues for trial and thereby presenting to the trier of fact the best information available in the most efficient manner; it is the rule in this state (see, CPLR 3101 [a]; Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968]). The notes and raw data of a court-appointed neutral forensic psychologist are certainly relevant and material to the issue of custody, particularly where the conclusions drawn from that data are the central evidence before the court. It cannot be denied that providing such disclosure will be of assistance in preparing for trial, particularly to the party seeking to challenge the psychologist’s conclusions. In fact, similar disclosure of the data prepared and notes made by experts is routinely permitted in other areas of the law (see, Karn v Ingersoll-Rand Co., 168 FRD 633 [ND Ind 1996] [tort litigation]; People v Almonor, 93 NY2d 571 [1999] [criminal prosecution]; Matter of Town of Pleasant Val. v New York State Bd. of Real Prop. Servs., 253 AD2d 8 [2d Dept 1999] [real property tax litigation]). Nevertheless, there are factors unique to the role of the court-appointed neutral forensic psychologist in a disputed custody matter that caution against unquestioning application here of the general rule of full disclosure.
*505 The appointment of a neutral expert is now a well-established part of custody litigation (see, Stern v Stern, 225 AD2d 540, 541 [2d Dept 1996]; Garvin v Garvin, 162 AD2d 497 [2d Dept 1990]). Originally founded on the court’s inherent power, with the use of their reports at trial dependent upon the consent of the parties (see, Kesseler v Kesseler, 10 NY2d 445 [1962]; Zirinsky v Zirinsky, 138 AD2d 43 [1st Dept 1988]; Waldman v Waldman, 95 AD2d 827 [2d Dept 1983]), the practice of appointing independent experts is now sanctioned by the rules of the court (see, 22 NYCRR 202.16 [g]; 202.18), which provide for the use of such reports, without consent, as the equivalent of the expert’s direct testimony, subject only to each party’s right to cross-examine (see, Chrisaidos v Chrisaidos, 170 AD2d 428 [2d Dept 1991]; Family Ct Act § 251). The value of the essential role played by the court-appointed neutral forensic psychologist in custody litigation is now so well recognized that such an appointment is essentially required in any custody litigation where there are serious questions of parental fitness (see, Matter of Vernon Mc. v Brenda N., 196 AD2d 823, 825 [2d Dept 1993] ; Koppenhoefer v Koppenhoefer, 159 AD2d 113 [2d Dept 1990]; Giraldo v Giraldo, 85 AD2d 164, 171 [1st Dept 1982]).
Thus, the court-appointed neutral forensic psychologist is not like the expert retained by litigants to testify in other types of matters. The report of such an expert is not introduced at trial for the purpose of advocating the position advanced by either party; rather, the report is intended to provide the court with an unbiased professional opinion on the often difficult psychosocial issues that are before the court in a custody dispute. While this does not mean that the court is required to, or even should, base its determination solely on the psychologist’s opinion (see, Edgerly v Moore, 232 AD2d 214, 215 [1st Dept 1996]; Chait v Chait, 215 AD2d 238, 239 [1st Dept 1995]; Alanna M. v Duncan M., 204 AD2d 409, 410 [2d Dept 1994]), the neutrality of the expert and the high regard that the court must have in order to appoint a particular forensic psychologist, makes his or her report a highly significant factor for the court to consider in the context of all of the evidence presented in the case, including any expert testimony presented by the parties (see, Young v Young, 212 AD2d 114, 125 [2d Dept 1995]; Linda R. v Richard E., 162 AD2d 48, 56 [2d Dept 1990]; Harvey v Share, 119 AD2d 823, 824 [2d Dept 1986]).
Despite the importance of this role, however, the court-appointed neutral forensic psychologist is not Caesar’s wife. Our jurisprudence has long concluded that the adversarial pro *506 cess is the best means for reaching the truth insofar as it is humanly possible to do so (see, Lanzano v City of New York, 71 NY2d 208 [1988]). Unless that process is to be abandoned in these matters (see, Rosenblitt v Rosenblitt, 107 AD2d 292, 299-300 [2d Dept 1985, Lazer, J., dissenting]), the conclusions of the court-appointed neutral forensic psychologist, like those of any other expert witness, are subject to question, through the process of cross-examination and rebuttal (see, Murtari v Murtari, 249 AD2d 960 [4th Dept 1998]). Since the normal grist for cross-examination is provided by the facts on which an expert’s conclusions are based, as reflected in the notes and raw data he or she has collected (see, Juvelier, Child Custody: Reconciling the Disclosure Rules in Custody and Visitation Cases, 3 NY Fam L Monthly, No. 4, at 4 [Feb. 2002]), it is difficult not to conclude that'the adversarial process would achieve its best result where such information is provided to counsel in advance of trial. In fact, the framers of the Uniform Marriage and Divorce Act have apparently reached this conclusion in permitting such disclosure (Uniform Marriage and Divorce Act § 405 [9 ULA 603 (1970)]). While this authority is not without weight, the relevant precedents in this jurisdiction require that the court exercise caution in reaching the same conclusion.
As the Court of Appeals has recognized, at issue in custody litigation are some of the most important, and the most difficult, questions that can be decided in our legal system (see, Matter of Lincoln v Lincoln, 24 NY2d 270 [1969]), affecting the intimate relationship between parents and children. When the court makes a custody determination, it sits as the successor to the chancellor, exercising the authority of the state as parens patriae (see, Finlay v Finlay, 240 NY 429, 433-434 [1925]). For that reason, the court has broad discretion to do what it determines to be right (see, Fanelli v Fanelli, 215 AD2d 718 [2d Dept 1995]) in the “best interests of the children” (see, Friederwitzer v Friederwitzer, 55 NY2d 89 [1982]; Eschbach v Eschbach, 56 NY2d 167 [1982]).
If the process of custody litigation is to be successful, the court’s concern for the “best interests of the children” must apply not only with respect to the result, but in the means used to reach that result, as well. Custody cases are difficult, at best, not merely because the correct result is often elusive, but also because the adversarial process that is most conducive to reaching the truth is often detrimental to the relationships it is intended to protect. Thus, while it is true that the court should exercise every means possible to ensure that it has all *507 relevant information before making a custody determination (see, DeBlasio v DeBlasio, 187 AD2d 551 [2d Dept 1992]; Burgel v Burgel, 141 AD2d 215, 216 [2d Dept 1988]), the court must also be cognizant of the great burden that such litigation places on the parties and the children. The process should not be permitted to defeat, through an excess of zeal in discovering every last ounce of relevant information, the beneficial effects that are intended to be achieved in the result.
It is, of course, within the discretion of the court to limit disclosure (see, CPLR 3103; Hirschfeld v Hirschfeld, 114 AD2d 1006 [2d Dept 1985], affd 69 NY2d 842 [1987]). Because of the importance of the issues, the breadth of the court’s discretion with respect to discovery in custody cases is substantial, commensurate with its discretion in determining the substantive issue (see, Wegman v Wegman, 37 NY2d 940 [1975]; Annexstein v Annexstein, 202 AD2d 1060 [4th Dept 1994]; Garvin v Garvin, 162 AD2d 497, 499 [2d Dept 1990]; Lohmiller v Lohmiller, 118 AD2d 760 [2d Dept 1986]). “The procedures of the custody proceeding must, therefore, be molded to serve its primary purpose, and limited modifications of the traditional requirements of the adversary system must be made, if necessary.” (Matter of Lincoln v Lincoln, 24 NY2d 270, 272 [1969].) Put simply, if the procedures sought to be employed in litigating custody are not likely to improve the result sufficiently to justify their financial and emotional cost, the means must be discarded, or, at least, limited.
Recognizing these concerns, the New York courts and, particularly, the Appellate Division, Second Department, have regularly restricted discovery in custody cases in ways that reduce the burden on the litigants and the children without compromising the integrity of the adversarial process. Depositions with respect to issues related to custody are generally not permitted (see, Garvin v Garvin, 162 AD2d 497 [2d Dept 1990]; Hunter v Hunter, 10 AD2d 291 [1st Dept 1960]; P. v P., 93 Misc 2d 704 [Sup Ct, NY County 1978]; but see, Westrom v Westrom, 130 Misc 2d 265, 266 [Sup Ct, Chautauqua County 1985]), and bills of particulars may not be demanded (see, Ginsberg v Ginsberg, 104 AD2d 482 [2d Dept 1984]). Access to forensic reports is routinely limited; although copies are provided to counsel and the parties are entitled to review them, the reports may not be copied (see, Matter of Morrissey v Morrissey, 225 AD2d 779 [2d Dept 1996]; Matter of Scuderi-Forzano v Forzano, 213 AD2d 652 [2d Dept 1995]). Requests for the production of a party’s medical records have been denied (see, *508 McDonald v McDonald, 196 AD2d 7 [2d Dept 1994]; Anne D. v Raymond D., 139 Misc 2d 718 [Sup Ct, Nassau County 1988]; Doe v Roe, 139 Misc 2d 209 [Sup Ct, NY County 1988]), even though any privilege has been waived (see, Baecher v Baecher, 58 AD2d 821 [2d Dept 1977]).[2] Leave to conduct additional psychological testing has regularly been denied (see, Garvin v Garvin, 162 AD2d 497 [2d Dept 1990]; Matter of Quinn v Genovese, 158 AD2d 602 [2d Dept 1990]; Forrest v Forrest, 131 AD2d 425 [2d Dept 1987]; Lohmiller v Lohmiller, 118 AD2d 760 [2d Dept 1986]; Rosenblitt v Rosenblitt, 107 AD2d 292 [2d Dept 1985]), except where a deficiency in the initial examination, a potential bias, or other cause has been demonstrated (see, Bricker v Powers, 196 AD2d 696 [1st Dept 1993]; Sardella v Sardella, 125 AD2d 384 [2d Dept 1986]). The general rule that can be divined from these cases is that before such discovery is allowed, a showing is required of some specific need for disclosure beyond the materiality of the information sought and its general utility in litigating the issues.
The same policy should apply to a request for disclosure of the raw data and notes of the court-appointed neutral forensic psychologist. Like the discovery that has routinely been denied, inspection of the raw data and notes, and their use on cross-examination, may add to the relevant information before the court, but at a significant cost. Notes and raw data contain the unfiltered, immediate impressions of the psychologist, jotted down in haste and without the benefit of reflection. While the litigator sees in this the advantage of investigating the thought process of the evaluator, the disclosure of such material is potentially damaging, in very real ways, to the litigants and their relationships. Critically, unlike the release of data in other litigation, the parties here will continue to have a relationship after the instant litigation is concluded. In fact, it is that relationship that is the subject of the litigation. Like the examinations before trial at issue in P. v P. (93 Misc 2d at 704) and Hunter v Hunter (10 AD2d at 294), disclosure of raw data and notes may make the future relationship of the parties more difficult. Even recognizing the importance of cross-examination as a means for finding the truth, the future relationship of the parties should not be put at risk simply to develop more points for cross-examination.
*509 This is particularly true when one recognizes that it is not the immediate impressions of the psychologist that are ultimately at issue in the litigation, but the opinions he or she has reached about the parties and their relationships with their children. These opinions are formulated not simply by replicating the notes and test data, but by evaluating all of the information and impressions gathered in the course of the investigation in light of the expert’s professional training and experience. Thus, while reviewing the raw data and notes may shed some light on the psychologist’s thought process, it does not ultimately reach the central issue of the validity of the psychologist’s conclusions (see, Feuerman v Feuerman, 112 Misc 2d 961, 965 [Sup Ct, Nassau County 1982]). Instead, what it does is give the cross-examiner the opportunity to discredit the psychologist’s testimony on the basis of perceived inconsistencies between the notes and the conclusions, thereby turning the litigation into a lengthy and expensive critique of the psychologist’s methodology, rather than a test of the conclusions themselves. The limited value of such cross-examination does not justify the financial or emotional cost to the parties and, particularly, the children.
Finally, as Justice McCaffrey noted in Feuerman (112 AD2d at 965), making the raw data and notes available prior to trial may have the unintended consequence of undermining the effectiveness of the neutral evaluations themselves. Psychologists who know that their data and notes are likely to be scrutinized may, understandably, be less willing to commit to paper the impressions they form in the course of their interviews with the parties — impressions that may not individually have a strong basis in evidence, but which may, after reflection, be a significant element of the mosaic that is reflected in the report. It is the validity of the report, and, consequently, the soundness of the court’s determination, that will suffer in such circumstances, to the ultimate detriment of the children. If the substantial benefit of such reports is to be maintained, this result must be avoided.
In light of all this, it is apparent to the court that pretrial disclosure of the notes and raw data of the court-appointed neutral forensic psychologist is likely to make custody litigation lengthier and more expensive without providing any concomitant benefit sufficient to justify its costs. While it would always be better to have more information, if there were no human or financial cost from obtaining it, that is not the case here. This is not to say that there are no circumstances in *510 which such disclosure is warranted. The court is obligated to exercise its discretion in each case so as to balance the benefit to be achieved by permitting such disclosure against the detriment it causes. As with the additional evaluations at issue in Rosenblitt (107 AD2d at 295-296), a showing of bias or other reason to doubt the credibility of the report, other than mere displeasure with its result, would cause the balance to weigh in favor of disclosure. Thus, such requests should be evaluated in the same manner as requests for additional psychological examinations, and should be granted only upon a showing, on the basis of the report itself or through extrinsic evidence, of special circumstances, such as a deficiency in the report, a potential bias or other cause.
Here, the defendant has made no such showing. There is simply nothing on the face of the report or in the facts that have been related with respect to its development that would justify inquiry into its foundations. The defendant’s motion for an order directing the court-appointed neutral forensic psychologist to disclose her notes and the raw data of the psychological testing she has conducted is therefore denied. The court-appointed neutral forensic psychologist is directed, however, to produce her notes at the time of her testimony, in the event that sufficient cause is established at that time for the review of those notes by the defendant’s counsel.

. Psychiatrists, as well as psychologists, are regularly appointed as neutral forensic evaluators in custody cases. For ease of terminology, and because in this case the court-appointed neutral expert is a psychologist, the court will use that term to refer to the expert here. The general principles discussed are equally applicable to court-appointed neutral forensic psychiatrists.

. Apparently there is no ethical restriction on such disclosure, as long as the disclosure is made to another qualified professional (see, Nouryan and Weisel, When Ethics Collide: Psychologists, Attorneys and Disclosure, 36 Cal W L Rev 125 [1999]).