OPINION OF THE COURT
Paul I. Marx, J.
It is ordered that the motions are disposed as follows.
Background
The parties were married on July 26, 2003. There are two children of the marriage: O.C., born xx/xx/2004, and M.C., born xx/xx/2007. The parties and children reside in the marital residence in Cross River, NY. Defendant occupies a separate apartment within the marital residence. The parties agreed to joint legal custody and shared residential custody on a temporary basis, in order to resolve their competing family offense petitions and to dissolve their cross orders of protection. (Order to show cause, interim so-ordered stipulation [Hon. Michelle I. Schauer, J.F.C.], exhibit A.)
On September 15, 2014, plaintiff filed the instant action for dissolution of the parties’ marriage based upon irretrievable breakdown of the relationship, pursuant to Domestic Relations Law § 170 (7). On October 21, 2015, defendant filed a verified answer and counterclaim for divorce on the same grounds.
Plaintiff is approximately 45 years old. She is the chief executive officer of K.R., Inc. in Connecticut. Her gross income in 2014, as reflected on her W-2, was $563,096.55. She holds a Master’s degree in Business Administration, earned prior to the marriage.
*894 Defendant is approximately 44 years old. He is a consultant/ account manager for an insurance company. His total gross income in 2014, as reflected on his W-2 forms, was $86,785.48.[1]
On January 12, 2015, the parties and counsel appeared for a conference before Court Attorney Referee Laurie Sullivan. Referee Sullivan recommended consolidation of the parties’ custody and visitation proceeding in the Family Court with the instant action. The Referee also recommended that the Attorney for the Children appointed in Family Court be appointed to represent the children in this court and that a psychologist be appointed to conduct a forensic evaluation of the parties and their children.
The court ordered consolidation of the custody and visitation proceeding then pending in Family Court with the instant matrimonial action. (Consolidation order dated Jan. 12, 2015.) By order dated January 13, 2015, the court appointed Marc S. Mednick, Ph.D., DABPS to conduct a forensic evaluation. By order of the same date, the court appointed Stephen Kmetz, Esq. as privately paid Attorney for the Children.
On September 9, 2015, the parties and counsel appeared for a conference before Referee Sullivan. In accordance with the Westchester County Supreme Court Matrimonial Part Operational Rules,[2] plaintiff requested authorization to move for the release of the forensic evaluator’s entire file. Referee Sullivan issued rule E authorization to plaintiff. On the same date, *895 Referee Sullivan issued separate rule E authorization to defendant to move for expert and interim counsel fees.
Discussion
Release of Forensic Evaluator’s File
Plaintiff moves for the release to her counsel and retained expert of the entire contents of the court-appointed forensic evaluator’s file, including the notes, test results and raw data used to prepare his report. Plaintiff asserts that the law concerning the release of a forensic evaluator’s underlying notes and data is evolving, with the trend moving toward release of such information being “mandatory.” She notes that there are no Appellate Division decisions on the issue and argues in favor of abandoning the overly restrictive “special circumstances” standard which generally has been applied by trial courts in the Second Department. Plaintiff contends that even if the court applied the “special circumstances” standard, disclosure of the underlying notes and data is warranted because of the numerous deficiencies in Dr. Mednick’s report. Plaintiff claims that Dr. Mednick’s report is “weak, poorly organized . . . and . . . fails to make definitive conclusions or recommendations.” (Affirmation of Dolores Gebhardt, Esq. ¶ 7.) Plaintiff argues further that the conclusions and recommendations made in the report “are unexplained and seemingly unsupported by data.”[3] (Id.) She identifies at least 10 specific deficiencies, among them that the report indicates bias against her client by severely criticizing aspects of her personality without examining whether the characteristics he criticizes have any impact on her parenting skills. Plaintiff contends that access to Dr. Mednick’s notes and data will assist the parties with settlement and allow their counsel to better prepare for trial if no settlement is reached.
Defendant objects to the release of Dr. Mednick’s file, contending that plaintiff has not demonstrated any special circumstances that warrant its release. Defendant claims that “Plaintiff has not demonstrated a single reason much less any ‘special circumstances’ to warrant the release of the file.” (Affirmation of Jo-Ann Cambareri, Esq. in opp ¶ 2.) Defendant points out certain contradictions in plaintiff’s position. For example, defendant asserts that plaintiff’s counsel states in *896 her affirmation both that Dr. Mednick is biased against her client and that he has “labeled both parties in unflattering ways.” Defendant contends that if plaintiff’s characterization of Dr. Mednick’s labeling is true, it tends to indicate a lack of any bias on the part of the forensic evaluator. Defendant contends further that if the report shows any bias, the bias is against him. Defendant references Dr. Mednick’s statements in the report about his alcoholism, suicide attempt, possible neurological problems and possible lack of appropriate boundaries with the parties’ 11-year-old daughter. Defendant argues that plaintiff can adequately pursue the deficiencies she identified in the report upon cross-examination of Dr. Mednick at trial. Defendant advocates withholding the underlying data, because he believes its release will exacerbate the parties’ difficulties co-parenting their children and only prolong the litigation. (Id. ¶¶ 3-4.)
The reported decisions governing the release of a forensic evaluator’s file are exclusively trial court decisions. The Appellate Division has yet to examine this particular issue. The case law in this area began with Feuerman v Feuerman (112 Misc 2d 961 [Sup Ct, Nassau County 1982]), which held that the underlying information was not relevant and its disclosure was not material or necessary for the party’s private psychiatrist to make an individual evaluation and recommendation. Further, the court determined that the test results and other data was not material, necessary or proper for the “purpose [ ] of having [a] private psychiatrist ‘determine whether [the evaluators] had sufficient objective justification for their conclusions and recommendations’, for that is the function of the trial court based upon all of the evidence and testimony taken at the trial.” (Id. at 965.) Moreover, the court determined that the party’s psychiatrist could conduct similar tests to those performed by the evaluators and present his “own findings and evaluations to the court at the time of trial.” (Id.) The court opined that a trial subpoena to the evaluators directing that any notes, test results and other supporting data be brought to trial would suffice.
Decades later, Feuerman was followed by Ochs v Ochs (193 Misc 2d 502 [Sup Ct, Westchester County 2002]), which noted the court’s concern in Feuerman that making the test results and notes available before trial might undermine the effectiveness of the evaluation. The court in Ochs also noted the sensitivity of custody determinations and some of the limita *897 tions that courts have placed upon discovery in this area. (Id. at 507-508 [noting with citations to authority that depositions are generally not allowed on custody issues; bills of particulars are not allowed to be demanded; limits on access to a party’s medical records; strict control of additional psychological testing; and the restrictions on access to forensic reports].) The court held that the party seeking disclosure of the forensic evaluator’s file must show something more than mere displeasure with the forensic report; disclosure “should be granted only upon a showing, on the basis of the report itself or through extrinsic evidence, of special circumstances, such as a deficiency in the report, a potential bias or other cause.” (Id. at 510.) Notably, the court stated that discretion must be exercised “in each case so as to balance the benefit to be achieved by permitting such disclosure against the detriment it causes.” (Id.)
Ochs has been followed by trial courts in the First and Second Departments. In CP v AP (32 Misc 3d 1210[A], 2011 NY Slip Op 51245[U] [Sup Ct, NY County 2011]), the court followed Ochs closely, finding no special circumstances to warrant pretrial disclosure of the underlying basis of the court-appointed neutral forensic evaluator’s report. The circumstances alleged by the wife, who sought release of the forensic evaluator’s file, were that it was needed for trial preparation and because the forensic evaluator would be available on only one of the two dates set for trial. In support of her request, the wife offered the 2006 report of the New York State Matrimonial Commission, recommending that the forensic evaluator’s report be subject to all available discovery devices for probing the basis for the report. The court noted that the Commission’s report recognized that its recommendation for full disclosure of the forensic’s file did not conform to existing case law on that issue. The court denied access to the file in advance of trial. Indeed, the court may have gone even one step further by applying the pretrial standard to access at trial when it held that the evaluator’s notes and test results could be produced at trial only if there was a sufficient showing of bias or other reason that called into question the reliability of the report. (CP v AP, 2011 NY Slip Op 51245[U], *4.)
The court in R.L. v L.T. (NYLJ 1202672096267 [Sup Ct, Westchester County, index No. 3406-12]), was similarly unpersuaded by the father’s request in that case for access to the forensic evaluator’s entire file. In addition to claiming that the entire file was needed to prepare for cross-examination at trial, *898 the father contended that the forensic evaluator did not use accepted psychological testing methods and reached her conclusions without a proper basis. The court denied access, relying upon the specific finding in Ochs that such access could have a deleterious effect on the parties’ relationship. The court also concurred with Ochs’ assessment of the evaluator’s underlying notes, finding little value in the “unfiltered, immediate impressions of the psychologist, jotted down in haste.” (Id. at *4, quoting Ochs at 508.) The court held that the father did not identify “any particular bias on the part of the evaluator” and his contention about the testing methodology merely threatened to turn the trial into a long and costly critique of the methodology utilized by the evaluator. Accordingly, the court found no special circumstances to justify the father’s access to the file.
In S.C. v H.B. (9 Misc 3d 1110[A], 2005 NY Slip Op 51484[U] [Fam Ct, Rockland County 2005]), the court also followed Ochs. The court took an interesting approach based upon the peculiar facts of that case and ordered only partial disclosure of the evaluator’s file. The court began its analysis by stating that
“[c]ross-examination of the expert and rebuttal testimony that is based on a full critique of the evaluation and careful analysis of the facts, which form the basis for his conclusions, would aid the court in evaluating the scientific validity of said conclusions, and would be greatly facilitated by thorough pre-trial disclosure.” (S.C. v H.B., 2005 NY Slip Op 51484[U], *1-2, citing Ochs and Timothy M. Tippins, Custody Evaluations, Part 4: Full Disclosure Critical, NYLJ, Jan. 15, 2004 at 3, col 1.)
Rather than apply Ochs wholesale, the court considered the types of information contained in the evaluator’s file and found that certain records in the file did not implicate the concerns expressed in Ochs. Specifically, the court ordered disclosure of the parties’ Department of Mental Health Forensic Unit Questionnaires and the records of the respondent’s admission to Good Samaritan Hospital Frawley Unit and psychiatric treatment, which had been provided to the forensic evaluator, the petitioner’s privately retained psychiatrist and his attorney. Such information did not pose any danger of revealing the forensic evaluator’s thoughts and perceptions and any physician-patient privilege that applied to the documents had been waived by respondent actively contesting custody and making the information available to the evaluator. However, *899 consistent with Ochs, the court declined to order disclosure of the forensic evaluator’s notes and memoranda.
The weight of authority on this issue adheres to the special circumstances standard set forth in Ochs. However, another view has emerged from the trial court in Nassau County from which Feuerman hails. The court in J.F.D. v J.D. (45 Misc 3d 1212[A], 2014 NY Slip Op 51547[U] [Sup Ct, Nassau County 2014]), adopted the recommendation of 2013 NY Assembly Bill A8342,[4] 5which proposed amending Domestic Relations Law §§ 70 and 240 to allow disclosure, pursuant to a demand made under CPLR 3120, of a forensic evaluator’s entire file, including raw data, notes, tests and test results. The court did not lightly deviate from the special circumstances standard established by Ochs and followed by other trial courts. However, the court determined that changing times signaled a need for a different standard in the law related to this issue. Following a thorough analysis of the case law, the proposed legislation and the views of the New York State Matrimonial Commission expressed in its report to the Chief Judge of the State of New York dated February 2006, the court held that a “rebuttable presumption” standard allowing full disclosure of the forensic evaluator’s entire file was warranted. The court relied upon the recommendation in the proposed bill and the general acceptance in the field of the standards for forensic evaluators’ reports set forth in the Matrimonial Commission’s Report. In addition, the court noted the routine permission granted by courts in other areas of the law for access to the notes and data prepared by experts. (J.F.D., 2014 NY Slip Op 51547[U], *3, citing e.g. People v Almonor, 93 NY2d 571 [1999].) The court also gave weight to the due process concerns of parents regarding the utmost important issue of the custody of their children. {Id. at *6.)[5] Finally, the court considered its critical need for the most reliable information to render an appropriate and just determination of custody that is in the best *900 interests of the child. {Id. at *5 [“Custody determinations are the most important and most difficult determinations which the Court is required to make, and restricting a proper cross examination by not allowing the raw data to be distributed could be detrimental to the best interests of the child and this Court’s ultimate decision”].)
This court is persuaded by the court’s rationale in J.F.D. v J.D., for applying
“a rebuttable presumption of pre-trial discovery of the forensic report and the evaluator’s entire file, including raw data, notes, tests, test results and any other materials utilized ... in every case, unless a specific motion is made to restrain the release of those materials based upon a showing of substantial prejudice.” {Id. at *5.)
It is beyond cavil that this court must have access to good science and the most reliable data in making the critical determination of custody and visitation. Further, “[i]t is beyond dispute that full disclosure of all relevant and material information has proven to be the surest method of sharpening the issue for trial and thereby presenting the trier of fact the best information available in the most efficient manner.” {Id. at *4.) Giving counsel and the parties’ access to the underlying notes and raw data is undoubtedly the surest means of uncovering any bias on the part of the evaluator and any deficiencies or errors in the report, particularly where such bias or deficiencies or errors may not be evident from the conclusions expressed in the report.
Running throughout the decision in Ochs and forming the basis for the “special circumstances” standard established in that case is a concern that subjecting the neutral forensic evaluator’s report to the usual devices of the adversarial process will prove harmful to the parties’ relationship with their children and defeat the beneficial result the report is meant to achieve. {Ochs at 506-509.) This court is hard pressed to find that the parties’ relationship to each other or to their child in this or any custody proceeding is likely to be further damaged by disclosing the raw data which underlies the forensic evaluator’s report to any greater extent than the observations and conclusions made in the report itself. The degree to which any damage may occur to these already fraught *901 relationships is dwarfed by the substantial benefit to the court in obtaining a full understanding of the forensic report and the process used by the evaluator to reach its conclusions, so that the court may determine the best interests of the children.
There is no reasonable justification to withhold such critical information from counsel and the parties. Without full disclosure, any factual errors that may form the basis for the forensic evaluator’s opinions and conclusions will never come to light. By allowing full disclosure, the parties, who are in the best position to identify any factual errors, will have the opportunity to find and address such errors with their counsel and/or a privately retained expert. Custody determinations should not be made based upon a black box. All of the underlying information, which is unquestionably relevant and material, must be provided to counsel, who must be fully equipped to cross-examine the forensic evaluator and establish for the court, as trier of fact, the credibility and reliability of the opinions and conclusions expressed by the neutral forensic evaluator.
The court also disagrees with the court’s conclusion in Ochs that full disclosure will “[turn] the litigation into a lengthy and expensive critique of the [forensic evaluator’s] methodology, rather than a test of the conclusions themselves.” (Id. at 509.) On the contrary, the conclusions expressed in the report cannot be fully tested and proven to be sound without full disclosure of the underlying raw data and materials that led the forensic evaluator to arrive at those conclusions. In addition, deferring full disclosure to the time of trial is more likely to generate a request for delay so that an individual expert can be engaged to render an opinion once the underlying data has been obtained by counsel. Such delay is antithetical to the requirement set forth in the rules of the court and the Matrimonial Part Rules that trials in matrimonial actions, and custody trials in particular, be conducted day to day until concluded. (Uniform Civil Rules for Sup Ct and County Ct [22 NYCRR] § 202.16 [1]; Operational Rules of Westchester County Sup Ct Matrimonial Part, rule G [2].)[6]
Data, by its nature, is capable of multiple interpretations, or, perhaps, error, mathematical or otherwise. Thus, it is important *902 for all parties to have the same data to evaluate. The alternative would be to require the parties to submit to multiple examinations by evaluators on all sides, the approach favored by Feuerman. Not only would this be duplicative, time wasting and expensive, it may lead to different data being evaluated by the psychologists for the competing sides. Thus, this court believes that full disclosure is preferable, even at the expense of the fantasy espoused by Ochs that nondisclosure will aid in healing the rifts between the parties and enhance their ability to co-parent. Simply put, the full light of truth cannot be shined on the custody issue without all parties having full and advance access to relevant data with which they can devise a strategy and evaluate their positions.
An unguided cross-examination (akin to an examination before trial being conducted during the trial) is more likely to lengthen the proceedings while counsel seeks to divine the basis for the conclusions in the report. How can the court rely on a report that is essentially a black box into which the only light that may be shone comes from a searching rather than a piercing cross-examination? It cannot. While the forensic evaluator is selected by the court, if the forensic report is never thoroughly tested, the court proceeds on blind faith and its own divinations. The paramount importance of custody determinations and their sensitivity require a more informed inquiry. Clearly, if the opinions of the neutral evaluator cannot survive the scrutiny provided by a fully informed cross-examination, then the court should not rely on such flawed opinions.[7]
Accordingly, this court agrees with and adopts the rebuttable presumption standard in favor of full disclosure of the neutral forensic evaluator’s entire file.[8] Adequate protection is afforded *903 in the unusual case by the ability of a party or the expert to seek a protective order from the court.[9]
The court further agrees that the neutral forensic evaluator’s file shall be made available to the parties and counsel in the same manner in which they are provided access to the forensic report. Therefore, the forensic evaluator shall provide the court with a copy of the entire contents of his file in this case and copies for all counsel, within 10 days of this decision and order. Upon the court’s receipt of a copy of the file, it will notify all counsel, who shall execute a confidentiality affidavit, allowing them to obtain a copy of the file, show it to their clients (only in counsel’s office), allow the client to take notes, but not pictures or copies of any kind, for purposes of assisting with trial preparation. Counsel may provide a copy of the file to an expert privately retained by them to review and assess the forensic evaluator’s report, who shall execute a confidentiality affidavit similar to the one executed by counsel, prior to receipt of the forensic evaluator’s file. Counsel shall file his/her confidentiality affidavit with the court prior to the release of the file. Counsel shall file the expert’s confidentiality affidavit with the court prior to releasing the file to the expert.
Interim Expert Fees
Defendant moves for an award of interim expert fees in the amount of $12,500 to be paid by certified check to him from plaintiff, without prejudice to further application for such fees at the custody trial. Defendant contends that plaintiff is the monied spouse and that he is unable to afford to retain an expert to review the forensic evaluator’s report. Defendant seeks to be put on a level playing field with plaintiff, who has already retained her own forensic evaluator.
Plaintiff concedes that she is the monied spouse, but claims she cannot afford to pay defendant’s expert fees. Despite her considerable salary, plaintiff asserts that she has “a total of $2,014.23 in the bank.” (Aff of K.C. in opp ¶ 8.) She claims that her salary is subsumed by the family’s living expenses. Her net worth statement shows that she is paying $11,508 per month towards the mortgage, homeowner’s association fees, real estate taxes and a home equity loan. She claims that the family’s expenses total almost $24,000 per month and defendant contributes only $2,000 per month, although she acknowl *904 edges that the allocation was agreed to by her. Pursuant to the parties’ so-ordered pendente lite stipulation, dated November 20, 2014, plaintiff agreed to continue paying the majority of the families’ expenses pendente lite, while defendant pays $2,000 per month and the monthly premiums on his life insurance policies. Plaintiff claims that the parties are “house poor.” She asserts that she is funding the litigation with loans from her father. She supports this assertion with copies of promissory notes. She suggests that defendant has similar funding sources. She proposes that he borrow money from his own parents, who are alleged to be millionaires, or take loans against his 401(k). In addition, she contends that defendant works part-time (“less than 40 hours per week”) and can increase his income by working more hours.
The decision to award expert witness fees in a matrimonial action is within the sound discretion of the trial court. (Avello v Avello, 72 AD3d 850, 852 [2d Dept 2010].) Awards of expert witness fees should not be made routinely. (Id.) Instead, there should be “a detailed showing of the services to be rendered and the estimated time involved.” (Id., citing O’Donnell v O’Donnell, 2 AD3d 604 [2d Dept 2003]; Ahern v Ahern, 94 AD2d 53, 58 [2d Dept 1983].) The request for expert witness fees must be supported by an affidavit from the expert. “Absent affidavits from the expert witnesses at issue, the Supreme Court lacks a sufficient basis to grant a motion for the award of such fees.” (Avello at 852, citing O’Donnell and Corrao v Corrao, 209 AD2d 573, 574 [2d Dept 1994].)
Defendant provided a copy of his expert’s curriculum vita, order to show cause for expert and interim counsel fees, vita of Peter Joseph Favaro, Ph.D., exhibit I, and retainer agreement, reply affidavit, exhibit N. Conspicuously absent from defendant’s submissions is any affidavit from the expert setting forth “the services to be rendered and the estimated time involved,” as required. (Avello at 852.) Although defendant attests in his own affidavit to the purpose for retaining Dr. Favaro as an expert and the services he will perform, defendant has no personal knowledge of these services or the amount of time it will take to perform them. Defendant must provide an affidavit from the expert.
Accordingly, the court denies the branch of defendant’s motion requesting expert fees. However, expert fees may be necessary in order that defendant may utilize Dr. Favaro to review the raw data and other materials upon which Dr. Mednick *905 based his expert report. Therefore, defendant may renew his application within 30 days hereof, upon proper papers making the required detailed showing of the work his expert will perform and the expert’s estimate as to the amount of time it will take him to perform his work.
Interim Counsel Fees
Defendant moves for interim counsel fees in the amount of $50,000 in order for counsel to prepare for and conduct the custody trial. Defendant contends that plaintiff is the monied spouse. Plaintiff concedes that she is the monied spouse.
The court may award interim counsel fees, in its discretion, pursuant to Domestic Relations Law § 237, based upon the equities and circumstances of the case. (Isaacs v Isaacs, 71 AD3d 951 [2d Dept 2010]; Morrissey v Morrissey, 259 AD2d 472, 473 [2d Dept 1999].) Domestic Relations Law § 237 (a) provides that “[t]here shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse.” An award of interim fees is “generally . . . warranted where there is a significant disparity in the financial circumstances of the parties.” (Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008] [citations omitted].) “An award of interim counsel fees ensures that the nonmonied spouse will be able to litigate the action, and do so on equal footing with the monied spouse.” (Id.)
In determining the amount of an interim award of counsel fees, the court need not undertake the kind of detailed inquiry needed to make a final award of fees at the conclusion of the case. (Prichep at 65.) Thus, the court need not consider the relative merit of the parties’ positions, the nature and extent of services rendered, or other factors relevant to a final award. (Id.)
Defendant is clearly the nonmonied spouse. As such, defendant is entitled to an award of interim counsel fees to litigate the action on an equal footing with plaintiff. Nonetheless, the court agrees that defendant must have “some skin in the game” and that he has other income sources, including the wherewithal to increase his income. Defendant may well be justified in choosing to litigate custody where he seeks greater access to his children than plaintiff is willing to allow. Indeed, the parties’ positions are so far apart that they have been unable to close the yawning chasm between them on this issue. The forensic report does not fully support defendant’s position. Nor does the report fully support plaintiff’s position. It is in the *906 best interest of the children and the parties themselves to find the middle ground. The court urges them to do so.[10]
Accordingly, the court awards defendant counsel fees in the sum of $25,000. Plaintiff is directed to pay that amount directly to defendant’s counsel within 60 days of the date of this decision and order.

. Defendant states in his affidavit in support of his motion for fees that his gross pay in 2014 was $86,685. He references the three W-2s issued to him from MetLife, which provide the following amounts: $76,663.18, $8,762.30 and $1,360. The total of these amounts is $86,785.48.

. The Operational Rules of the Westchester County Supreme Court Matrimonial Part require that
“[f]or pre-note of issue cases, except in the event of an emergency that requires immediate relief from a Matrimonial Part Justice, no motions are to be made without the movant first requesting a pre-motion conference and without the holding of a pre-motion conference, unless the motion seeks to vacate or modify a recommended order.” (Operational Rules of Westchester County Sup Ct Matrimonial Part, rule E [1].)
“If the motion is made following a pre-motion conference, the Rule E Motion Compliance Sheet shall be signed by the court attorney-referee and shall set forth the relief that may be requested in the motion(s) and the motion briefing schedule.
The movant may not seek any other relief other than that authorized by the court attorney-referee at the pre-motion conference and specified in the Rule E Motion Compliance Sheet.” (Id. at rule E [6].)

. The court does not agree with plaintiff’s counsel’s characterizations of Dr. Mednick’s report, but given the court’s decision, counsel’s assertions are irrevelant.

. Bill A8342 was proposed by Helene E. Weinstein, chair of the Assembly Standing Committee on the Judiciary, to amend Domestic Relations Law §§70 and 240 to allow disclosure of the evaluations and reports of court ordered forensic evaluators in child custody and visitation proceedings, including the entirety of the evaluator’s file containing notes, test data, raw test materials and any other materials relied upon by the evaluator in creating the final report submitted to the court.

. The court even analogized to the Rosario rule in criminal cases, which requires the prosecution to disclose exculpatory information, such as pretrial statements of witnesses, to the defense. (J.F.D., 2014 NY Slip Op 51547[U], *6, referencing People v Rosario, 9 NY2d 286 [1961].) The court also noted *900 that preliminary notes made by police officers prior to preparing their formal report are discoverable in criminal cases. (Id.)

. 22 NYCRR 202.16 (1) provides, in relevant part, that “[h]earings or trials pertaining to temporary or permanent custody or visitation shall proceed from day to day [to] conclusion”; Matrimonial Part rule G (2) provides that “[a] 11 matrimonial trials and hearings shall proceed day-to-day until conclusion.”

. The court is well aware that it is not required to base its custody determination solely on the neutral forensic evaluator’s report, which must never usurp the court’s judgment. The report is, however, a significant factor to be considered by the court, along with all of the evidence and any testimony from other experts that may be presented by the parties. (J.F.D. v J.D., 2014 NY Slip Op 51547 [U], *2.)

. In the event a competing report is obtained, all raw materials created by that evaluator should be shared in like manner.

. Any objection by a party or the neutral forensic evaluator in any given case should be made on motion, brought by order to show cause, pursuant to CPLR 3103.

. The court is hopeful that plaintiff’s contention, that access to the forensic evaluator’s entire file will enable the parties to reach a settlement of custody, bears out.