# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Parentage of:<br>T.J. (dob: 10/12/11) and<br>I.J. (dob: 12/29/12), | ) ) ) ) | No. 75718-1-I |
| Minor Children. | ) ) ) | DIVISION ONE |
| ANDREA ANTHONY, | ) ) | UNPUBLISHED |
| Respondent, | ) ) | FILED: July 31, 2017 |
| v. | ) ) | |
| AWAN JOHNSON, | ) ) | |
| Appellant. | ) ) ) | |

Cox, J. – Awan Johnson challenges the trial court's modifications to a

parenting plan. The trial court had jurisdiction to order these modifications and

did not abuse its discretion in doing so. The trial court did not abuse its

discretion in admitting expert testimony concerning a forensic psychological

evaluation of Johnson. We affirm and award appellate attorney fees to Andrea

Anthony, subject to her compliance with RAP 18.1(d).

Anthony and Johnson shared an intimate relationship for four years. They

had two children in that time, T.J. and I.J. Johnson also had an older child, G.R.

from a prior relationship.

After her relationship with Johnson ended, Anthony petitioned to establish

a parenting plan. The two agreed to a plan under which they shared decision-

making authority. The plan's residential schedule limited Johnson's residential time, but that time would increase based on his compliance with certain conditions.

Soon after the order on the agreed plan was entered, T.J. started behaving aggressively at home and in school. Johnson suggested that T.J. stay overnight with him, knowing the prospect frightened him. T.J.'s behavior worsened and became sexual. It appeared that sexual interactions between G.R. and T.J. may have triggered this behavioral change. Johnson refused to cooperate with Anthony and intervene with either child. Concerned, Anthony then petitioned to modify the parenting plan.

The matter eventually went to trial. The trial court, in its final order, made findings of domestic violence and refusal to perform parenting functions as to Johnson. The court also found the absence of emotional ties between Johnson and his children. Based on these findings, it entered a final parenting plan restricting Johnson's residential time to phased in visitations under supervision. It also imposed upon him several therapeutic education requirements. It required that Johnson keep T.J. and I.J. away from G.R. And it transferred substantial decision-making, jointly held before, to Anthony's sole authority.

Johnson appeals.

## SCOPE OF MODIFICATIONS

Johnson argues that the major modifications to the parenting plan should be vacated because the trial court lacked jurisdiction to order them. We disagree.

2

We first note that the trial court indisputably had subject matter jurisdiction.[1] Johnson's argument is directed to the trial court's authority to order these specific modifications, not its subject matter jurisdiction to do so.

A trial court's authority to modify a parenting plan is strictly controlled by statute.[2] RCW 26.09.260 provides several grounds on which a trial court may order such a modification.

RCW 26.09.260(1) authorizes a trial court to order major modifications to a parenting plan when a substantial change has occurred in the circumstances of either the child or the nonmoving party. The modification must also be in, and necessary to serve, the child's best interests.[3] The court may order modifications to the residential schedule when it finds one of the circumstances in RCW 26.09.260(2) present. These include when "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child."[4]

Under RCW 26.09.260(5), a trial court may order minor modifications to the residential schedule, absent a RCW 26.09.260 circumstance, if a substantial change has occurred. A minor modification is one that affects no more than 24 days in a calendar year. Because modifications under this subsection are called

---

[1] See WASH. CONST. art. 4, § 6.

[2] In re Marriage of McDevitt, 181 Wn. App. 765, 769, 326 P.3d 865 (2014).

[3] RCW 26.09.260(1).

[4] RCW 26.09.260(2)(c).

3

minor, limited in scope, and require a lesser showing, while modifications under RCW 26.09.260(1) are not called minor, are not limited, and require a greater showing, the latter may properly be called major.

Other subsections of the statute permit the trial court to make certain modifications without a showing of substantial change. Under RCW 26.09.260(4), the trial court may reduce contact between the child and the "parent with whom the child does not reside a majority of the time." To do so, it must find that the modification would serve the child's best interests based on the criteria in RCW 26.09.191. These criteria include, amongst others, "a substantial refusal to perform parenting functions," "neglect or substantial nonperformance of parenting functions," and "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child."[5]

RCW 26.09.260(10) allows the trial court to modify nonresidential portions of the parenting plan without considering the RCW 26.09.260(2) circumstances so long as a substantial change has occurred and the adjustment would serve the child's best interests.

We review for abuse of discretion parenting plan modifications.[6] That discretion is notably broad in matters of child welfare.[7] Unchallenged findings are verities on appeal.[8]

---

[5] RCW 26.09.191(1), (3)(a), (g).

[6] In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

[7] Id.

[8] Choi v. Sung, 154 Wn. App. 303, 313, 225 P.3d 425 (2010).

Here, Anthony's petition asserted the proper statutory grounds for both major and minor modifications. At paragraph 2.8, she cites RCW 26.09.260(1) and (2). She alleges that a substantial change had occurred and as a consequence, the "children's environment under the custody decree/parenting plan/residential schedule is detrimental to the children's physical, mental[,] or emotional health." On this basis, she argued that a modification would be in the children's best interest. As just discussed, this standard and these subsections provide the grounds for a major modification.

At paragraph 2.9, Anthony alleges that the residential schedule should be modified because a reduction of Johnson's residential time would serve the children's best interests. She cites RCW 26.09.260(4) or (8) in support. A trial court acting under RCW 26.09.260(4) must consider the criteria in RCW 26.09.191. Anthony identifies three of those criteria in this paragraph.

Paragraph 2.10 alleges grounds for a minor modification as acknowledged by Johnson and in accordance with RCW 26.09.260(5).

Lastly, paragraph 2.12 alleges that the nonresidential provisions of the parenting plan should be adjusted because of a substantial change of circumstance and the best interests of the child. This paragraph cites and is in accordance with RCW 26.09.260(10).

Johnson argued in closing below that Anthony was only asking for the minor modification indicated in paragraph 2.10, and thus the trial court could not order a major modification. The trial court properly disagreed. It described this

paragraph as "an alternate pleading rather than the sole basis for what was being done." A plain reading of the record shows this to be true.

Johnson further argues that, irrespective of its statutory authority, the trial court lacked "'jurisdiction to grant relief beyond that sought in the complaint.'"[9] This argument is not persuasive.

Johnson relies for this contention on In re Marriage of Leslie.[10] In that case, Barbara Jean Hartman had petitioned for divorce from Charles Leslie.[11] Her petition did not ask for medical expenses.[12] But she subsequently petitioned to modify the dissolution decree to require Leslie pay for their child's orthodontic care.[13] The trial court granted this petition.[14] Leslie then moved for relief from this new requirement.[15] The trial court denied his motion and he appealed.[16]

---

[9] Opening Brief of Appellant at 10 (quoting In re Marriage of Leslie, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989)).

[10] 112 Wn.2d 612, 772 P.2d 1013 (1989).

[11] Id. at 614.

[12] Id.

[13] Id.

[14] Id. at 615.

[15] Id. at 616.

[16] Id.

The supreme court reversed, holding that "a court has no jurisdiction to grant relief beyond that sought in the complaint. To grant such relief without notice and an opportunity to be heard denies procedural due process."[17]

But here, the petition gave Johnson notice. And Johnson had the opportunity to be heard throughout the litigation below. Thus this case is distinguishable.

Johnson also relies on In re Marriage of Shryock.[18] In that case, the trial court denied one parent's petition to modify the parenting plan, finding no substantial change had occurred and thus the statutory criteria for modification were not met.[19] But it adopted a parenting plan proposed by the other parent.[20]

The court of appeals reversed the adoption of this proposed plan.[21] It held that the trial court had abused its discretion for entering such an order despite "finding there were no statutory reasons justifying modification."[22]

Here, there were sufficient statutory reasons to justify the petition as discussed earlier in this opinion. Thus, this case is distinguishable.

---

[17] Id. at 617.

[18] 76 Wn. App. 848, 850, 888 P.2d 750 (1995).

[19] Id. at 849-50.

[20] Id.

[21] Id. at 849.

[22] Id. at 851.

## DR. GARY WIEDER'S TESTIMONY

Johnson also argues that the trial court abused its discretion in considering testimony from Dr. Wieder because the testimony was based on improperly disclosed information. We disagree.

Johnson argues that Dr. Marsha Hedrick inappropriately disclosed his psychological evaluation to Dr. Wieder and that Dr. Wieder inappropriately disclosed this information to the court, all in violation of statute and regulation. He contends that such disclosures were illegal without his written consent.

Johnson relies for this argument upon Washington's Uniform Health Care Information Act at chapter 70.02 RCW, WAC 246-924-445, and HIPAA. None of these support his position.

We seek, in construing a statute, to ascertain and carry out the legislature's intent.[23] We do so primarily by reading the plain meaning of the statutory language.[24]

Within the Uniform Health Care Information Act, RCW 70.02.020(1) prohibits health care providers from disclosing "health care information about a patient to any other person without the patient's written authorization."

Elsewhere, this chapter defines "[h]ealth care information" as information "that identifies or can readily be associated with the identity of a patient and

---

[23] Thorpe v. Inslee, 188 Wn.2d 282, 289, 393 P.3d 1231, 1234 (2017).

[24] Id.

directly relates to the patient's health care."[25] "Health care" is "any care, service, or procedure provided by a health care provider" either to "diagnose, treat, or maintain a patient's physical or mental condition" or that "affects the structure or any function of the human body."[26] A person who "receives or has received health care" is a "[p]atient."[27]

Public policy, as expressed by the legislature, dictates "that a patient's interest in the proper use and disclosure of the patient's health care information survives even when the information is held by persons other than health care providers."[28]

WAC 246-924-445 establishes "minimum standards for conducting parenting evaluations." Subsection (10) sets such standards for the written records psychologists must maintain in the course of such examinations. These include "[c]ourt order or signed consent from all parties to conduct the evaluation" and "[a]ppropriate court order or signed authorizations for release of information."[29]

Lastly, HIPAA is an expansive federal statute governing the maintenance and transfer of healthcare information.[30]

---

[25] RCW 70.02.010(16).

[26] RCW 70.02.010(14)(a)(b).

[27] RCW 70.02.010(31).

[28] RCW 70.02.005(4).

[29] WAC 246-924-445(10)(a)(c).

[30] Pub. L. 104-191, Aug. 21, 1996, 110 Stat. 1936.

Johnson's argument concerns whether trial court properly admitted Dr. Wieder's testimony in spite of these alleged legal barriers. We review for abuse of discretion the trial court's admission of testimony. And we will not reverse unless the error prejudiced the result below.

Here, the court ordered that Johnson "promptly undergo a complete psychological evaluation[] with Dr. Hedrick" based upon the GAL's recommendation. It further ordered that Dr. Hedrick would conduct the evaluation as "she deems appropriate."

According to Dr. Hedrick's evaluation, an informed consent form was provided to Johnson. This form explained "that the examination was not therapy, and that forensic evaluations are not confidential and not covered by therapist-patient privilege."[31] It also explained that its "focus is to generate legally relevant hypotheses and provide information to the court."[32] According to Dr. Hedrick, Johnson "indicated that he understood and agreed to the above by signing the necessary consent form."[33]

Anthony's forensic psychologist, Dr. Wieder, testified that he had reviewed Dr. Hedrick's psychological evaluation. He questioned Dr. Hedrick's conclusion that Johnson's clinical scales were not elevated beyond the normal range. He independently analyzed the evaluation based on his expertise. He concluded

---

[31] Trial Exhibit 31 at 493.

[32] Id.

[33] Id.

that Johnson's profile was associated with angry outbursts and violence, raising concerns about the children's well-being.

Upon cross-examination, Dr. Wieder testified that he could not recall how he had obtained the evaluation but could "dig up" the answer if the court required. Neither party nor the court made such a request.

The authorities just discussed did not bar Dr. Hedrick from disclosing Johnson's evaluation to Dr. Wieder. Nor did they bar Dr. Wieder from testifying based on his review of that evaluation.

First, the informed consent form Johnson signed shows that he understood the evaluation was not confidential. Johnson does not explain why this is insufficient as written authorization for disclosure.

Second, the state law authorities, Washington's Uniform Health Care Information Act and WAC 246-924-445, do not apply. The Uniform Health Care Information Act applies to the protection of patients' health care information. As defined above, health care is a service to "diagnose, treat, or maintain a patient's physical or mental condition" or that "affects the structure or any function of the human body."[34] One who receives such care is a patient.

But here, the evaluation was for forensic purposes, to "generate legally relevant hypotheses and provide information to the court."[35] It was not for health

---

[34] RCW 70.02.010(14)(a)(b).

[35] Trial Exhibit 31 at 493.

care purposes.[36] Thus, Johnson was not a patient in regards to this information. Even were it otherwise, Johnson cites no authority holding that evidentiary exclusion is the proper remedy under these circumstances.[37] He argues only that remedies exist outside the Uniform Health Care Information Act. Accordingly, the Uniform Health Care Information Act did not govern disclosure of this information.

WAC 246-924-445 sets standards for the conduct of parenting evaluations. Johnson cites nothing in the record that indicates Dr. Hedrick conducted a parenting evaluation. Not only did Dr. Wieder have the necessary authorization, but the court ordered the evaluation conducted. Thus, even if this regulation applied, the requirements for possession of a written authorization or court order permitting disclosure would be met. Dr. Wieder offered to "dig up" such documents but Johnson never requested them.

Lastly, we need not address Johnson's HIPAA argument. This legislation is expansive and Johnson's "[p]assing treatment" fails to specify any provision pertaining to disclosure under these circumstances.[38]

Nor can Johnson show that any alleged error prejudiced him. The trial court's extensive findings, unchallenged on appeal, gave sufficient basis for its

---

[36] Id.

[37] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[38] Christian v. Tohmeh, 191 Wn. App. 709, 728, 366 P.3d 16 (2015).

conclusions and order. Thus, even if the trial court abused its discretion, the abuse was harmless to the result below.[39]

Johnson argues in his reply brief that a New York trial court opinion persuasively suggests that the trial court here abused its discretion in admitting Dr. Wieder's testimony. This argument is unpersuasive.

In Ochs v. Ochs, the trial court appointed a neutral forensic psychologist to evaluate both parents in a custody dispute.[40] Pretrial, one party requested copies of the psychologist's notes and raw data.[41] The trial court noted that disclosure of such data might be helpful to the parties.[42] But it recognized that it might also worsen the parties' relationship, endanger the children's welfare, and extend litigation.[43] Thus, the court held that it would permit disclosure only upon the movant showing "special circumstances, such as a deficiency in the report, a potential bias[,] or other cause."[44]

Ochs is not persuasive here. According to a case cited in Anthony's statement of additional authorities, other New York courts have critically questioned its reasoning and conclusion.[45] Nor does Ochs's reasoning aid

---

[39] See ER 103(a); RAP 2.4(b).

[40] 193 Misc.2d 502, 503, 749 N.Y.S.2d 650 (2002).

[41] Id.

[42] Id. at 504.

[43] Id. at 507-08.

[44] Id. at 510.

[45] K.C. v. J.C., 50 Misc.3d 892, 25 N.Y.S.3d 798 (2015).

Johnson. That case held that disclosure of such data was in the trial court's discretion, exercised to safeguard the child's best interests. Johnson fails to argue that the trial court here abused its discretion somehow in this regard. Rather, he only argues that the trial court abused its discretion in admitting testimony which he contends was barred by statute and regulation.

### ATTORNEY FEES ON APPEAL

Both parties seek fees on appeal, pursuant to RAP 18.1. Anthony is entitled to an award of fees, subject to her compliance with RAP 18.1(d). Johnson is not.

RCW 26.09.140 authorizes us to award fees "after considering the financial resources of both parties" to one party that has maintained or defended a proceeding under RCW 26.09.

Here, Johnson does not allege any financial need to justify an award of fees. Thus, he is not entitled to an award on appeal.

In considering payment for the fees and costs of the GAL, the trial court found that Anthony "has no ability to pay and [Johnson] has an ability to pay." The trial court cited an earlier order that calculated Johnson's monthly income at $11,475.50. It found that Anthony "cannot fund protracted litigation and provide for her children." She had "stop[ped] working to care for her children because of this crisis."

Anthony's financial declaration shows the same. Her monthly net income is $4,427 and she lost several months of work supporting her children. Her expenses exceed her income and total $7,479. She spends $3,058 of this on the

children's expenses, not including groceries. Her total assets amount to $2,000 and she often must rely on gifts and loans from family.

This financial declaration, supported by the trial court's findings, is sufficient to demonstrate Anthony's comparative financial need. The monthly expense of supporting herself and her children alone far exceed her monthly income.

Based on RCW 26.09.140 and her financial need, Anthony is entitled to an award of fees, subject to her compliance with RAP 18.1(d).

We affirm the orders on appeal. We award Anthony fees on appeal, subject to her compliance with RAP 18.1(d).

_Cox, J._

WE CONCUR: